## DUBUCLET *v.* LOUISIANA.

A suit instituted to try the title of a party to a State office, whereof he is the incumbent, and whereto he was, by the constituted authorities of the State, duly declared to be elected pursuant to her laws, cannot be removed from one of her courts into the Circuit Court of the United States on his petition, setting forth that, by reason of bribery and threats, colored persons who were qualified to vote at the election, and who would have voted for him, were deterred from voting, and that the returning board rejected the votes of the parishes where such illegal practices prevailed.

ERROR to the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. John Ray* for the plaintiff in error.

*Mr. Conway Robinson, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This suit was brought by the State of Louisiana on the relation of John C. Moncure, in the Sixth District Court for the parish of Orleans, on the 20th of March, 1877, to try the title of Dubuclet, the plaintiff in error, to the office of treasurer of state, the duties of which he was performing under a commission from the governor, dated Dec. 31, 1874. The allegations of the petition are, in substance, that Moncure was in fact elected to the office at an election which was held on the 2d of November, 1874, but that the returning board, by a false and illegal canvass and compilation of the votes, declared that a majority were in favor of Dubuclet, who was thereupon commissioned.

On the 2d of April, 1877, Dubuclet filed his petition for the removal of the suit to the Circuit Court of the United States for the District of Louisiana. This petition was granted by the State court, but when the case got to the Circuit Court it was remanded on the ground that it was not in law removable. To reverse that order of the Circuit Court this writ of error was brought.

It is conceded that, according to the decisions in *Strauder* v. *West Virginia* (100 U. S. 303) and *Virginia* v. *Rives* (id. 313). a case was not made for removal under sect. 641, Rev. Stat. We think it equally clear that the showing in the petition was not sufficient to effect a transfer under the second section of the act of March 3, 1875, c. 137, 18 Stat. 470. The averments relied on for this purpose are as follows: —

" Petitioner further represents that, at the election held in this State on the      day of November, A. D. 1874, for state treasurer, at which petitioner was a candidate, that in the parishes of De Soto, Bienville, Union, Grant, and other parishes of the State, there were more than five thousand citizens of color of the State of Louisiana and of the United States qualified by law to vote at said election, and who offered to vote, and if they had been permitted to vote would have voted for petitioner, and against Jno. C. Moncure, relator, and who were prevented, hindered, and controlled and intimidated from voting for petitioner by relator Moncure and those acting in his interest, by means of bribery, threats of depriving them of employment and occupation, and of ejecting them from rented houses, lands, and other property, and by threats of refusing to renew leases or contracts for labor, and by threats of violence to them or their families, in violation of their and your petitioner's civil rights, and in violation of the laws of the United States, made and enacted to protect the civil rights of citizens of color and previous condition of servitude.

" Petitioner further represents that, in consequence of said illegal acts and violation of the laws of the State of Louisiana and the United States, by relator Moncure, and those acting in his interest, at and before said election, and for the purpose of defeating your petitioner for treasurer of the State of Louisiana, that the returning officers of election of the State of Louisiana, in accordance to law, and their sworn duty, duly returned your petitioner elected, by rejecting the votes cast in the several parishes and at the several polls where relators, in their petition, complain the vote should have been counted in his, Moncure's favor, and where they complain the vote should not have been counted in favor of petitioner.

" Petitioner further represents that the suit of the relator is for the object and purpose of depriving your petitioner of the office of treasurer of the State of Louisiana, by reason of the denial of the aforesaid citizens the right to vote on account of race, color, and previous condition of servitude, in violation of the laws of the United States made to protect the equal civil rights of petitioner and those offering to vote for him, and by reason of the right guaranteed by the fifteenth article of amendment to the Constitution of the United States."

If all that is here alleged be true, it does not show a case "arising under the Constitution or laws of the United States." If Moncure was guilty of what is charged against him, he had violated the provisions of sect. 5507 of the Revised Statutes; but that gave Dubuclet no right, under the laws of the United States, to have the entire vote of the designated parishes thrown out by the canvassers of the election. Moncure might have been prosecuted for what he had done, but neither his prosecution, conviction, nor punishment would of itself set aside the vote of the parishes or polls as returned. The effect of such conduct on the validity of the election depended, so far as this record shows, on the laws of the State and not on those of the United States. Whether Moncure and those in his interest have been guilty of a crime punishable by law, may depend alone on the laws of the United States; but the United States have not as yet attempted to declare what effect such unlawful acts shall have on the election of a purely State officer. The laws of Louisiana, it is conceded, gave colored men the right to vote at all elections, and because in this case they were prevented by intimidation from exercising that privilege, the properly constituted canvassing board of the State, acting, as is alleged by Dubuclet in his petition, "in accordance to law and their sworn duty," rejected all votes from the parishes and polls where intimidation occurred, and thus found that he was elected. Had the vote of these parishes been counted, the result would have been in favor of Moncure. Thus, according to Dubuclet's own showing, his right to his office depends on the laws of the State. Because the laws of the State required the returning board to reject the votes of the parishes and polls where intimidation, whether of white or colored voters,

materially interfered with the election, the majority of the votes cast at the election, which could be counted, were in his favor, and, therefore, he is in office. Such is in effect his allegation in the petition for removal. Clearly, then, on his own showing, his right arises not so much under the Constitution and laws of the United States as under those of the State.

Sect. 2010 Revised Statutes gives one who " is defeated or deprived of his election," to such an office as Dubuclet holds, the right of suing for his office in the courts of the United States, " where it appears that the sole question touching the title to such office arises out of the denial of the right to vote to citizens who so offered to vote, on account of race, color, or previous condition of servitude." That certainly is not this case; for Dubuclet, instead of being defeated or deprived of his election, is now in office under his election duly declared pursuant to the laws of the State, and exercising all the duties of his place and enjoying all its privileges. This section provides for an original suit by one out of office to get in, but not for the removal of a suit against one in office to put him out. It is unnecessary to discuss the validity of the law in its application to purely State offices, for it does not affect this case. It is one thing to have the right to sue in the courts of the United States, and another to transfer to that jurisdiction a suit lawfully begun in a State court.

We think it clear that the Circuit Court ought not to have taken jurisdiction of the case.

                                        *Judgment affirmed.*