## STATE OF LOUISIANA
v.
## Howard Earl LONDON.
Crim. No. 71–41.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Dec. 30, 1971.

Sargent Pitcher, Jr., Dist. Atty., Cheney Joseph, Jr., J. David McNeill, III, Asst. Dist. Attys., Baton Rouge, La., for plaintiff.

Murphy W. Bell, Robert C. Williams, Baton Rouge, La., for defendant.

E. GORDON WEST, Chief Judge:

Howard Earl London, a resident of the Parish of East Baton Rouge, Louisi-

ana, was charged in the Nineteenth Judicial District Court of Louisiana with violating Louisiana R.S. 14:34, i.e., having committed aggravated battery by hitting one Terry White with a broomstick on January 26, 1971 during the course of a confrontation between black and white students at the recently integrated Zachary High School. Defendant removed the case to this Court and the State of Louisiana filed a motion to remand.

As grounds for removal defendant contends that he is denied and cannot enforce in state courts his rights under Public Law 88–352, Title VI, Section 601 of July 2, 1964. He further alleges that the statute under which he was arrested is being selectively applied as part of a policy of racial discrimination so as to deny his right to pursue an education on an equal basis with whites, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

On July 30, 1971, an evidentiary hearing was held in this Court to determine whether or not this case should be remanded to the State Court.

At the evidentiary hearing, the defendant presented two witnesses. Ralph Moore, a black student at Zachary, stated that on January 26, 1971 a confrontation occurred at the High School between black and white students. According to his testimony, most of the school's black students had remained out of class that day protesting school policies. He said that the brawl was initiated when a black student grabbed a stick from a group of white students who had appeared around the side of a building holding sticks. Eventually both black and white students had sticks, and there was quite a lot of hitting by both groups of students. The altercation eventually eased and the blacks began to leave the school. About this time the police arrived.

Moore also testified to incidents of past "harassment" of blacks by the school administration concerning such things as proper dress, hairstyles, and the commemoration of Martin Luther King day. He stated that no teachers took part in the fight, but that Assistant Principal A. P. Honeycutt did "single out" black students and tell them that they were suspended.

Ronald Holden, another black student, told of an incident during the brawl. He and a white boy were fighting. This was observed by the Assistant Principal who did not stop the fight until Holden was winning. Holden said that the confrontation was a spontaneous occurrence due to past grievances and was encouraged by neither the school officials nor the sheriff's deputies. Significantly, he also testified that London had a stick.

Captain Nathan Paxton, head of the Juvenile Bureau of the East Baton Rouge Sheriff's Department, was a witness for the state. According to his testimony, most of the fighting was over by the time he and his men arrived. At that time they interviewed both black and white students. The officers remained at the school for three days talking to the students.

Captain Paxton testified that London was arrested because a formal complaint was made by the "victim." The Sheriff's Department inquired as to whether or not anyone had witnessed the particular incident. They were advised by the Assistant Principal that he had seen it. The Assistant Principal also verified the fact that several other complaints had been filed but these were referred to Family Court because the students involved were juveniles (which London was not). No other arrests were made because no other victims came forward to accuse any specific persons. Paxton thought that many of the students just did not want to get involved with the police.

To Captain Paxton's knowledge no one suggested to the "victim" that he file this complaint against London. He said that the Principal did speak with many of the students (black and white) at which time he informed them that they

had a right to get a "solution" if they had been "offended."

The statute under which London asserts jurisdiction is 28 U.S.C.A. § 1443(1). This section provides:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof; * * *."

■ This section entitles a state criminal defendant to remove his prosecution to the federal court only if he meets both requirements of the section. He must show that the right upon which he relied is a "right under any law providing for . . . equal civil rights," and that he is "denied or cannot enforce" that right in the courts of the state. Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966).

In this case London seeks to rely on his alleged right to pursue a public education without racial discrimination or interference because of race, which he claims is granted by the Civil Rights Act of 1964.

■ The Supreme Court, in Georgia v. Rachel, supra, construed the phrase "any law providing for . . . equal civil rights" to mean any law providing for specific civil rights stated in terms of racial equality. 384 U.S. at 792, 86 S.Ct. at 1790. Thus broad claims of general constitutional rights or of rights under 42 U.S.C.A. § 1983 are not sufficient to support removal for these confer equal rights in the sense of bestowing them on all citizens. On the other hand, 42 U.S.C.A. §§ 1981 and 1982 do qualify as specific racial equality legislation and rights under those statutes will support removal under § 1443(1). City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944; Sunflower County Colored Baptist Ass'n v. Trustees of Indianola Mun. Separate School Ditrict, 369 F.2d 795 (CA 5 1966).

In Georgia v. Rachel, supra, the Supreme Court held that Title 42 U.S.C.A. § 2000a et seq., Civil Rights Act of 1964, § 201 et seq., also qualifies as racial equality legislation and removal may be obtained on the basis of the rights it grants. It is clear that the Court's holding was limited to the public accommodations section of the Civil Rights Act. No question was presented to the Court concerning the section relied on in this case, § 2000d of Title 42, § 601 of the Civil Rights Act of 1964. This, of course, does not prevent this Court from now considering whether or not § 2000d meets the standard set forth in the *Rachel* decision.

Section 2000d provides:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

From the language of the statute it does appear that § 2000d is a law providing for equal civil rights stated in terms of racial equality. This also appears to have been the opinion of the court in Commonwealth of Pennsylvania v. Leonard, 315 F.Supp. 215 (W.D.Pa. 1970), although the court there held that the activity engaged in (a demonstration march) was not protected by the statute.

What rights does London have under this federal law? The statute grants him the right not to be excluded from participation in, denied the benefits of, or be subjected to discrimination in a program or activity receiving federal funds on account of his race. The program or activity in this case is public schooling. The exclusion or discrimina-

tion is the criminal prosecution against him.

But it is not clear that the statute endows the defendant with a right not to be criminally prosecuted for conduct arising out of his attempts to participate in or receive the benefits of such a program. This section of the Civil Rights Act contains no provision similar to § 2000a–2 of the public accommodations section which specifically prohibits a person from punishing or attempting to punish any person for exercising any rights secured to him by the public accommodations section. See Georgia v. Rachel, 384 U.S. at 793, 86 S.Ct. at 1791.

If, however, § 2000d does afford such a protection, the defendant may not be brought to trial solely as a result of peaceful attempts to participate in or benefit from federally financed programs. He may not be prosecuted on a spurious charge the purpose, or effect of which would be to deny him the rights granted by § 2000d.

It is not necessary for the Court to decide whether or not this section grants a protection from criminal prosecution. Even assuming that it does, the case must be remanded to the state court.

■ Any right that London has under § 2000d does not encompass the right to engage in violent conduct. By engaging in such activity, London has made himself amenable to criminal prosecution by the State. This has been the uniform holding in removal cases involving the public accommodations section of the Act. South Carolina v. Moore, 10 Cr.L. 2005 (CA 4 – 9/8/71).

There was a factual basis for the charge against London; it was not just a spurious charge the real purpose of which was to deny him any federal right or punish him for exercising such right. A complaint was filed with the State by the "victim" of the battery specifically identifying London as his attacker. The incident was witnessed by the Assistant Principal, who verified the complaint to the police. The complaint was then processed in the normal manner by the police and the district attorney's office.

There was no showing that the complaint was instigated by the school in an attempt to discriminate against a black pupil or that it was part of a plan or pattern of racial discrimination or harassment by the school officials. It was solely the result of an action by an individual pupil.

■ Plaintiff alleged that his prosecution was the result of selective enforcement of the Louisiana criminal law in an effort to discriminate against blacks. This was not borne out at the hearing. The police were not present during the confrontation. Any arrest resulting from the incident had to be made as a result of a complaint by a pupil. The fact that few complaints were made is not attributable to the police. In fact, London was not the only person who was specifically identified by a "victim," but the complaints against the other pupils were handled by the Family Court because the persons involved were juveniles. London was not.

In short, London has not met the two requirements of the removal statute. He has not shown a "right" under the law because no federal law has given him the right to engage in non-peaceful conduct. As a consequence, there is no right which the state is denying him or which he cannot enforce in the state court. And while this matter is before the Court on a removal petition only, with no specific demand for injunctive relief having been made, the Court has, nevertheless, considered the case in light of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971), and has concluded that there is no evidence here of harassment or bad faith prosecution on the part of the State of Louisiana. The case should therefore be remanded to the State Court and judgment will be entered accordingly.