**David PAPEN**

v.

**TOWN OF BUNKIE, LOUISIANA.**

**Crim. A. No. 19181.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

Feb. 9, 1971.

John A. Boatner, Jr., Bunkie, La., for plaintiff.

G. M. Strickler, Jr., Stanley A. Halpin, Jr., New Orleans, La., for defendant.

NAUMAN S. SCOTT, District Judge:

This matter is before the Court on a motion by the respondent, Town of Bunkie, Louisiana, to remand a criminal prosecution removed by plaintiff, David Papen, under the provisions of 28 U.S.C. § 1443(1), from the Municipal Court of Bunkie, Louisiana, where plaintiff was charged with the violation of Sections 51 (Disturbing the Peace) and 56 (Resisting an Officer) of the Bunkie Criminal Code. His petition shows that plaintiff is a white citizen of Louisiana active in promoting self-help programs among Black farm workers in Louisiana including unionization, that on December 8, 1969 he was in a tavern for Negroes in Bunkie for the purpose of speaking with Black farm workers about potential self-help programs, and that upon discovery of this "white person" in a Negro tavern, the Bunkie Police questioned him and placed him under arrest for "solicit", disturbing the peace and interfering with an officer. He further states that this was an attempted intimidation and concludes that "the mere arrest and prosecution of petitioner thus denies him, and renders him unable to enforce in the State Courts, his equal Civil Rights" guaranteed by the First and Fourteenth Amendments of the Constitution of the United States and by 42 U.S.C. § 2000a and 18 U.S.C. § 245.

The uncontroverted facts are that Leon Scott has been employed by the City of Bunkie as a Black Policeman for a period of eighteen (18) years. At about 9:00 o'clock on the night in question he was called by a Black barmaid of a tavern owned by his son who told him that he had better come to the tavern because it looked as if there might be trouble. Upon entering the tavern Officer Scott approached Henry Lewis, a Black patron, who accompanied plaintiff Papen, and asked Lewis what was going on. Plaintiff Papen advised Lewis not to talk, or answer any of the officer's questions. Upon Lewis' refusal to answer inquiries, the officer took him into custody and plaintiff Papen followed them for a distance of approximately fifty (50') feet as they left the lounge. Lewis did answer questions out of the presence of plaintiff Papen. He was then released and no charges were brought against him. Officer Scott then returned to the tavern and asked plaintiff Papen to identify himself and the purpose of his being in the tavern. Plaintiff refused to comply so the officer took him into custody. The officer testified that plaintiff looked back apprehensively several times as they were leaving the tavern because the officer "had his gun on him". Thereupon the officer informed him that he would not be harmed if he went peaceably to the Police Station with the officer and plaintiff did so.

The officer stated that he had stopped when he first entered the tavern and had observed plaintiff Papen standing on a chair and then on a table making a speech. His companion Lewis appeared to have been drinking heavily but although plaintiff had been drinking, he was not drunk. There were about forty or fifty persons in the Bar who were drinking. The officer thought that plaintiff's speeches in the Bar before that many persons who were drinking threatened trouble which he, the officer, wished to prevent. Plaintiff admitted that he was talking to the various patrons but denied that he stood on a chair or a table or made a speech. It appears that plaintiff was not manhandled in any way, that he was informed of his

rights, that he was allowed to call attorneys and did finally contact Attorney White in Opelousas. City Judge Lee authorized the release of plaintiff shortly after midnight (about two and one-half hours after he was taken into custody) after receiving telephone assurances from plaintiff's attorney regarding bond.

There is no evidence that plaintiff was refused admittance or service at the tavern or that any official of the Town of Bunkie was aware of his identity, his presence in Bunkie or in the tavern, or his purpose in being there prior to the call received by Officer Scott from the barmaid. He did not recall seeing anyone in management at the tavern except the barmaid who did not molest him in any way. The Court finds no evidence that the purpose of plaintiff's arrest was to interfere with his union activities or the promotion of self-help programs among Negroes. The weight of the evidence is directly contrary to plaintiff's contention. No official of the City of Bunkie knew of petitioner's existence, his presence in Bunkie or his purpose in being there. Indeed, plaintiff apparently abandoned these contentions when his attorney stipulated during trial that plaintiff's civil rights during arrest had not been violated and "that the only right denied was that provided in the public accommodation statute". However, this contention likewise finds no basis in the evidence. It is directly contrary to plaintiff's statement in Paragraph Three of his petition for removal to the effect that at the time of his arrest he was peacefully enjoying the facilities of the tavern and speaking with Black workers to encourage them, among other things, to exercise their rights under Federal Law.

The provisions of 28 U.S.C. § 1443, under which jurisdiction is claimed, are as follows:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

The provisions of this Act have recently been considered in detail by the United States Supreme Court, Georgia v. Rachel, (1966), 384 U.S. 780, 86 S.Ct. 783, 16 L.Ed.2d 925; City of Greenwood v. Peacock, (1966), 384 U.S. 808, 86 S. Ct. 1800, 16 L.Ed.2d 944. Plaintiff's rights, if any, must be found in Paragraph One of the Act since Paragraph Two applies strictly to Federal Officers and those acting in support of them, *Rachel* case, supra. In that case, the Court, under provisions of Paragraph One of the Act, allowed removal of criminal prosecutions in a State court which attempted to enforce a Georgia Trespass Statute which violated and was contrary to the provisions of a Federal Statute, namely, the Federal Rights Act of 1964 (42 U.S.C. § 2000a et seq). Such is not the case here.

The distinction is clearly made in the *Peacock* case (supra) decided on the same day as the *Rachel* case (supra):

"* * * In Rachel the defendants relied on the specific provisions of a pre-emptive federal civil rights law— §§ 201(a) and 203(c) of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a(a) and 2000a–2(c) (1964 ed.), as construed in Hamm v. City of Rock Hill [379 U.S. 306, 85 S.Ct. 384, 13 L. Ed.2d 300], supra—that, under the conditions alleged, gave them: (1) the federal statutory right to remain on the property of a restaurant proprietor after being ordered to leave, despite a state law making it a criminal

offense not to leave, and (2) the further federal statutory right that no State should even attempt to prosecute them for their conduct. The Civil Rights Act of 1964 as construed in Hamm thus specifically and uniquely conferred upon the defendants an absolute right to "violate" the explicit terms of the state criminal trespass law with the impunity under the conditions alleged in the Rachel removal petition, and any attempt by the State to make them answer in a court for this conceded "violation" would directly deny their federal right "in the courts of [the] State". The present case differs from Rachel in two significant respects. First, no federal law confers an absolute right on private citizens—on civil rights advocates, on Negroes, or on anybody else—to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman. Second, no federal law confers immunity from state prosecution on such charges.

To sustain removal of these prosecutions to a federal court upon the allegations of the petitions in this case would therefore mark a complete departure from the terms of the removal statute, which allow removal only when a person is "denied or cannot enforce" a specified federal right "in the courts of [the] State," and a complete departure as well from the consistent line of this Court's decisions from Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664, to Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633. Those cases all stand for at least one basic proposition: It is not enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that

does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court. State of Georgia v. Rachel [384 U.S. 780, 86 S.Ct. 1783], 16 L.Ed.2d 925; Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664."

In this case there is no evidence of a denial or a failure to enforce any Federal Statute "providing for the equal civil rights of citizens". The motion to remand is therefore granted and the proceeding remanded to the City Court of the Town of Bunkie. Having sustained the Motion to Remand, it will not be necessary to consider plaintiff's Motion to Dismiss.