**STATE of CONNECTICUT**

**v.**

**Joseph INGRAM.**

**STATE of CONNECTICUT**

**v.**

**James M. MONKS.**

**Crim. Nos. 12471, 12481.**

United States District Court
D. Connecticut.

June 23, 1969.

John F. Mulcahy, Jr., Deputy Chief Prosecutor State of Connecticut, Woodbridge, Conn., for plaintiff.

Burton M. Weinstein, Saltman, Weiss, Weinstein & Elson, Allan R. Johnson, Willis & Willis, Bridgeport, Conn., for defendants.

MANSFIELD, District Judge.[*]

These cases came before this Court by virtue of the State of Connecticut's motion to dismiss removal petitions filed pursuant to 28 U.S.C. §§ 1443[1] and 1446 by Joseph Ingram and James M. Monks.[2] The removal petitions of Ingram and Monks indicate that they are seeking to transfer their cases from the Connecticut Circuit Court to this Court in order "to protect rights guaranteed petition-er[s] under the Vth, VIth and XIVth Amendments to the U. S. Constitution." Realizing that such broad allegations were insufficient to support removal under 28 U.S.C. § 1443, see Georgia v. Rachel, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1965), petitioners added, at oral argument, that removal was justified in their cases because the State was denying rights guaranteed them under 42 U.S.C. § 1985(2).[3]

The prosecutions which petitioners seek to remove to this Court stem initially from their arrests on September 21, 1968, Monks for breach of the peace and Ingram for breach of the peace and resisting arrest. It is alleged that while in the custody of the local police (Bridgeport, Connecticut) petitioner Ingram had two teeth knocked out.

On October 24, 1968, the Connecticut Circuit Court nolled the case of State of Connecticut v. Monks on the prosecutor's request. At that time the prosecutor noted that Monks had no prior record, lived in the neighborhood where the arrest was made, and that though Monks had been belligerent, the prosecutor had no complaining party to testify to the fact that Monks had been sniffing glue, which was the charge that the arresting officers were originally called to investigate.

Thereafter Monks agreed to testify on Ingram's behalf at the trial of the latter which was scheduled for February 4,

---

[*] Sitting by designation.

1. "§ 1443. Civil rights cases

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending;

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

2. The affidavit in the arrest warrant attached to petitioners' removal petitions indicates that both Monks and Ingram are white males.

3. "Obstructing justice; intimidating party, witness, or juror

"(2) * * * or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;".

1969. On January 31, 1969, however, Monks was re-arrested by the local police pursuant to a re-arrest warrant which charged Monks with breach of the peace on the basis of the same acts which led to his original arrest on September 21, 1968.

On February 4, 1969, the day to which Ingram's case had been assigned for trial, his attorney orally moved to stay the trial in order to give him the opportunity to determine the effect of the arrest of Monks on Ingram's trial. Thereafter, written motions were filed in Ingram's behalf requesting a stay and disclosure of the circumstances surrounding Monk's re-arrest. Though the exhibits to Ingram's removal petition include the warrant for re-arrest of Monks which appears to fully answer all the questions asked in his motion for disclosure, petitioner states that this motion, as well as his motion for a stay, were denied. These petitions for removal were then filed. They urge that the re-arrest of Monks was solely for the purpose of intimidating him so that he would not appear as a witness for Ingram. Such activities, petitioners allege, violate their constitutional rights of due process and equal protection as well as the specific right against intimidation of witnesses which petitioners find in 42 U.S.C. § 1985. For the reasons given below the motions of the State of Connecticut are granted and these cases are remanded to the state courts.

 It is well settled that 28 U.S.C. § 1443, subsection (2) (see fn. 1), "is available only to federal officers and to persons assisting such officers in the performance of their official duties." Greenwood v. Peacock, 384 U.S. 808, 815, 86 S.Ct. 1800, 1805, 16 L.Ed.2d 944 (1965). As petitioners have made no claim to the status covered by § 1443(2), their sole support for removal must be found in subsection (1) of that statute. And, as the Supreme Court has made clear that § 1443 will not support removal upon allegations of the infringement of "broad constitutional guarantees,"

Greenwood v. Peacock, *supra* at 825, 86 S.Ct. 1800; Georgia v. Rachel, *supra* 384 U.S. at 792, 86 S.Ct. 1783, 16 L.Ed.2d 925, petitioners' right to removal must rest in a finding that they cannot enforce in Connecticut courts "a right under any law providing for the equal rights of citizens. * * *" 28 U.S.C. § 1443(1). Petitioners point to 42 U.S.C. § 1985 (see fn. 3) as the right they cannot enforce in Connecticut's courts. Supreme Court decisions, however, once again block petitioners' attempt to enter the federal courts. The Court has made clear that § 1443(1) was designed to permit parties to remove their cases to the federal court only if they are being denied a right under

> "any law providing for specific civil rights stated in terms of racial equality * * * '[w]hen the removal statute speaks of "any law providing for equal rights", it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.'" Georgia v. Rachel, *supra* at 792, 86 S.Ct. at 1790.

Basically, petitioners' complaint is that they are being denied fair trials by the state's intimidation of Monks. The right to a fair trial is a fundamental civil right in our society, but not the creature of a specific statute providing for *equal* civil rights for all races. Consequently removal is not available to petitioners upon their allegations of the rights being denied to them. Further, even if petitioners could show that they rely upon a right created by such a statute they must also show that they are "denied or cannot enforce" that right in the courts of Connecticut. Georgia v. Rachel, *supra* at 788, 86 S.Ct. 1783. Their prediction of the likelihood of such a denial is insufficient. The denial "must be manifest in a formal expres-

sion of state law * * *" or there must be "an equivalent basis * * * for an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court." Georgia v. Rachel, *supra* at 803–804, 86 S.Ct. at 1796.

Petitioners are unable to point to any Connecticut statute denying or abrogating their rights or to any "equivalent basis" assuring this Court that their rights will not be respected by the state courts.[4] Instead they ask this Court to find, merely because of certain pretrial activities on the part of the police and prosecutor, that petitioners will be denied fair trials. The Supreme Court has answered such a request with a resounding refusal to presume that defendants cannot get adequate relief in state courts.

> "The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be 'denied or cannot enforce in the courts' of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." Greenwood v. Peacock, 384 U.S. 808, 827–828, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1965).

Nothing herein should be considered as condoning the alleged conduct of the local Bridgeport police and Connecticut

---

4. In Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1965), the petitioners were being prosecuted for trespass because they refused to obey an order to leave a public accommodation which order, it was alleged, was given solely for racial reasons. The Civil Rights Act of 1964 protects those who refuse such an order not only from state court conviction, but from any prosecution for such activity. Consequently the Court was able to find an "equivalent basis" for a firm prediction of a denial of a specified federal right because "[T]he burden of having to defend the prosecu-

prosecutor, which, if established, could call for investigation and remedial action in the interest of assuring petitioners a fair trial, free from intimidation and harassment. However, we cannot presume at this stage of the proceedings that Connecticut courts will not fully protect these rights.

Accordingly the State's motion is granted and petitioners' cases are remanded to the Connecticut state courts.

It is so ordered.

tions is itself the denial of a right explicitly conferred by the Civil Rights Act of 1964 * * *." Georgia v. Rachel, *supra* at 805, 86 S.Ct. at 1797. Here petitioners do not argue that the prosecution by itself will deny them any right; instead they argue that the prosecution will be unfair. The time for relief from such a prosecution must come after the fact. There is no basis for interfering with a state court prosecution unless the petitioners' rights will be infringed by the mere fact of charges being brought against them.