The PEOPLE OF the STATE OF NEW YORK

v.

William JENKINS, Defendant.

No. 76 Civil 4602.

United States District Court, S. D. New York.

Oct. 20, 1976.

Mario Merola, Dist. Atty., County of Bronx, New York City, for The People of the State of New York; James J. Culleton, Asst. Dist. Atty., New York City, of counsel.

Robert Bornstein, Legal Aid Society, New York City, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

This is a criminal prosecution commenced in the Supreme Court of the State of New York, Bronx County, based upon an indictment returned by a grand jury charging William Jenkins with robbery in the first degree committed on different dates and

with criminal possession of a gun used on the occasion of each alleged robbery.

The indictment was returned on October 22, 1975. The trial of the case started on October 12, 1976, in the State Supreme Court, but after six jurors had been selected, the trial was suddenly interrupted when defendant filed a petition for removal to this court pursuant to 28 U.S.C., section 1443(1). The State now moves to remand the case to the State Supreme Court so that the trial may continue.

The removal petition states that defendant is a negro and alleges that the trial judge's conduct of the voir dire has had the effect of "expediting the exclusion of negroes from the jury" and "creating a climate of fear" in the remainder of the prospective jury panel.

The substance of petitioner's claim centers about the circumstance that the state court judge, after questioning two negro prospective jurors out of the hearing of the remaining panel, excused both with the consent of defense and prosecution. Both jurors had requested they be excused; one because he had previously been robbed and felt it might affect his judgment, and the other because the trial date "exceeded her expected duration of service." Against the foregoing background, petitioner complains that seven other prospective jurors, one of whom was a negro, were thereafter examined by the trial judge in open court with respect to the "graphic" details of crimes committed against them and that "a climate of fear" was thus created in the remainder of the jury panel. Prior to the questioning of these jurors before the entire panel, defense counsel objected and requested that they be examined in camera or at the sidebar, which request was denied. His motion for a mistrial also was denied.

■ Removal of a criminal prosecution from a state court to a federal district court is authorized under 28 U.S.C., section 1443(1) when the prosecution is pending "against any person who is denied or cannot enforce in the courts of . . . [a] State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." This section does not authorize removal for errors that may be committed during a trial even if they are claimed to be of constitutional dimension. On the contrary, removal may be obtained under the statute only for denial of "specific civil rights stated in terms of racial equality."[1] As our own Court of Appeals has stated, when section 1443 "speaks of 'any law providing for equal rights,' it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all."[2]

■ Petitioner's averments clearly do not qualify this case for removal under the statute. No specific civil rights protecting racial equality are implicated. The judge's questioning of the jurors who had been the victims of crime was conducted to weed out those who might be prejudiced against a defendant—no matter what his race, color or creed—who is on trial charged with a crime similar to one committed against a prospective juror. The judge's questioning was thus intended to select a fair and impartial jury; his actions affected all jurors equally and were supported by valid non-racial reasons. It may well be that the questioning of jurors as victims of prior criminal acts should have taken place in camera or out of the presence of chosen or prospective jurors.[3] But absent a contravention of a specifically protected civil right stated in

1. *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925 (1966).

2. *People of the State of New York v. Galamison*, 342 F.2d 255, 271 (2d Cir.), *cert. denied*, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965).

3. *See United States v. Colabella*, 448 F.2d 1299, 1303 (2d Cir. 1971), *cert. denied*, 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 803 (1972).

terms of racial equality, the failure so to question jurors does not present a basis for removal.

▮ In addition, even if it were assumed that the judge's actions had a prejudicial discriminatory impact amounting to reversible error, no right of removal under section 1443(1) would arise. That provision only authorizes removal when the alleged denial of rights of equality stems, not from the actions of individuals alone, but from a formal expression of state law manifesting the denial.[4] In the event of a conviction allegedly resulting from the racially discriminatory actions of a state court judge, the recourse is appellate review in the state courts, and if necessary a review from a final state court determination in the federal courts.[5] There is no reason to assume that the state courts will not zealously protect the constitutional rights of litigants. As the Supreme Court recently remarked in *Stone v. Powell:*

> [W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States. State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law.[6]

▮ The removal statute should not be used to abort or interrupt a state trial. While lawyers owe a duty to protect their clients' interests, they are equally under a duty not to interfere unduly with the orderly administration of justice. Procedural errors, even those that allegedly violate constitutional rights, do not justify resort to the removal statute unless its terms are

---

4. *See Johnson v. Mississippi,* 421 U.S. 213, 219–20, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975); *Georgia v. Rachel,* 384 U.S. 780, 803–04, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *City of Greenwood v. Peacock,* 384 U.S. 808, 828, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *People of State of New York v. Galamison,* 342 F.2d 255, 271 (2d Cir.), *cert. denied,* 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965); *New York v. Taylor,* 415 F.Supp. 107 (S.D.N.Y.1976); *Kennedy v. Wisconsin,* 373 F.Supp. 519, 520 (E.D. Wis.1974) (allegedly "racially prejudiced," "pro-police" judge); *Connecticut v. Ingram,* 300 F.Supp. 1153 (D.Conn.1969) (alleged police intimidation of defense witness); *see generally, Virginia v. Rives,* 100 U.S. 313, 25 L.Ed. 667 (1880); *Neal v. Delaware,* 103 U.S. 370, 26 L.Ed. 567 (1881); *Kentucky v. Powers,* 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906). The petitioner here has not referred the court to any provision of the constitution or laws of the State of New York that would operate to deny him equal civil rights in the course of his trial in the State Supreme Court. He has asserted that the Supreme Court Judge justified his refusal to question various jurors in camera by invoking Section 4 of the New York Judiciary Law, N.Y.Jud.L. § 4 (McKinney's 1968), which provides that "[t]he sittings of every court within this state shall be public." However, this law, far from effecting any denial of defendants' equal civil rights, guarantees such defendants that they will not be unjustly condemned by or suffer discrimination at the hands of a justice system operating without the public scrutiny. Indeed, section 4 can in no way be read to effect discrimination in terms of race; moreover, the allegations in the present petition for removal are clearly insufficient to support any inference that this is one of the "unusual case[s] where 'an equivalent basis [to a state legislative provision manifesting a denial of rights] could be shown for an equally firm prediction that the defendant would be denied or cannot enforce [his] federal rights in the state court.'" *Johnson v. Mississippi,* 421 U.S. 213, 219, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975), *quoting Georgia v. Rachel,* 384 U.S. 780, 804, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). Thus, no basis for removal under section 1443(1) has been shown to exist. *See id.; Chestnut v. People of New York,* 370 F.2d 1, 4 (2d Cir. 1966), *cert. denied,* 386 U.S. 1009, 87 S.Ct. 1355, 18 L.Ed.2d 439 (1967).

5. *City of Greenwood v. Peacock,* 384 U.S. 808, 828, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *Kentucky v. Powers,* 201 U.S. 1, 32–37, 26 S.Ct. 387, 50 L.Ed. 633 (1906).

6. —— U.S. ——, ——, n. 35, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976). The Court has made the same point in discussing the removal statute at issue in the present case:

> The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state . . . law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

*City of Greenwood v. Peacock,* 384 U.S. 808, 828, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966).

**416**

met; otherwise the federal courts would be inundated with a new flood of litigation, and "a wholesale dislocation of the historic relationship between the state and federal courts in the administration of the criminal law" would be effected.[7]

The motion to remand is granted.

---

7. *City of Greenwood v. Peacock*, 384 U.S. 808, 831, 86 S.Ct. 1800, 1814, 16 L.Ed.2d 944 (1966).