State of ALABAMA (Alabama State University), Plaintiff-Counter-Defendant-Appellee,

v.

Charles S. CONLEY, Defendant-Counter-Claimant-Appellant.

No. 00-14188

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

March 29, 2001.

Appeal from the United States District Court for the Middle District of Alabama. (No. 00-00801-CV-T-N), Myron H. Thompson, Judge.

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

The plaintiff, Alabama State University ("ASU"), filed this eminent domain action in state court against Charles S. Conley seeking to condemn various parcels of land owned by Conley. Conley, proceeding pro se, removed the action to the Middle District of Alabama on the grounds that federal subject matter jurisdiction existed under 42 U.S.C. §§ 1981, 1983, 1985 and 1988 and that the action was removable under 28 U.S.C. § 1443. Upon ASU's motion, the district court remanded the proceedings to state court. Conley appeals, arguing that removal jurisdiction under § 1443 exists in this case and that the district court erred when it remanded this action to state court.[1] After review, we affirm.

---

[1]In its remand order, the district court found that Conley had removed the lawsuit pursuant to 28 U.S.C. § 1441, which permits removal of actions raising federal questions. The court concluded that ASU's complaint presented no federal questions and that the court, therefore, lacked subject matter jurisdiction. Consequently, the court remanded the action pursuant to 28 U.S.C. § 1447(c). The court did not explicitly address Conley's asserted grounds for removal under § 1443.

An order remanding a civil action to state court for lack of subject matter jurisdiction pursuant to §§ 1441 and 1447(c) is not reviewable. 28 U.S.C. § 1447(d); *Thermtron Prods., Inc., v. Hermansdorfer,* 423 U.S. 336, 345-46, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), *abrogated on other grounds, Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Hence, in a prior order of this Court, we dismissed Conley's appeal to the extent it challenges the district court's remand order based on §§ 1441 and 1447(c), but allowed Conley's appeal to proceed to the extent he is challenging the district court's implicit determination that removal based on § 1443 was improper. Therefore, the only question presently before us is whether the district court properly remanded Conley's action based on a finding that removal jurisdiction under § 1443 did not exist.

## I. BACKGROUND FACTS[2]

According to Conley's petition for removal, ASU announced plans in 1995 to seek condemnation of certain properties located in the Bel Aire community adjacent to its campus as part of its plan to expand its athletic facilities. Over the next four years, ASU purchased various parcels of land from elderly or retired property owners.[3] Then, beginning in 1995, the State of Alabama, on behalf of ASU, instituted eminent domain proceedings against three or four owners of larger tracts of land in the area. Included among these landowners was Conley, who is black, and a group of white doctors called collectively the Southeastern Cardiac Building Partners ("Southeastern Cardiac").

Conley contends that, of these landowners, he owned the largest piece of land, with a total square footage of 135,067 feet. Conley's land contained 22 buildings housing 43 apartment units. Southeastern Cardiac's property, on the other hand, was comprised of 103,442 square feet of vacant land. Southeastern Cardiac had purchased this land, which was located behind its medical building, in 1995 for $1,400,000. The doctors intended to construct a cardiac center and parking lot on the property.

According to the removal petition, ASU offered to purchase Southeastern Cardiac's property for $219,000, but was rejected. Thereafter, ASU instituted condemnation proceedings against Southeastern Cardiac and, after extensive pre-trial discovery and negotiations, purchased Southeastern Cardiac's property for $2,163,500, the value established by Southeastern Cardiac's expert appraisers.

In 1999, ASU filed this eminent domain action against Conley in the probate court of Montgomery County, Alabama seeking to condemn Conley's property situated near the ASU campus and adjacent to Southeastern Cardiac's property. Following a decision by the probate court to award Conley $165,000 for his property, Conley appealed to the Alabama circuit court for a *de novo* trial and asserted a counterclaim against ASU alleging that it had violated his civil rights by engaging in a conspiracy to favor some property owners over others during the land acquisition process.

---

[2]The facts are drawn from the allegations in Conley's removal petition, which we assume are true for purposes of this appeal.

[3]Conley also contends that, during the aggressive land acquisition between 1995 and 1998, ASU was able to obtain land from black property owners in Bel Aire at less than fair market value before instituting eminent domain proceedings. In the process, ASU also caused a massive upheaval of the area's black residents, who then had difficulty resettling because ASU's below-market compensation for the land was inadequate to permit the black property owners to purchase real estate elsewhere. As a result of public outcry and local media criticism, ASU prodded members of the state legislature, some of whom were employees of ASU, to enact The Alabama Relocation Assistance and Real Property Acquisition Policies Act of 1999, which earmarked funds for additional payments of $22,500 for qualified property owners.

According to Conley, ASU officials conspired with a real estate appraiser to obtain an appraisal of Conley's property that artificially deflated its market value in violation of state appraisal standards. The appraiser accomplished this by comparing Conley's property, which is a large tract of land comprised of many lots, to small, individual lots located in areas inhabited only by black property owners and refusing to compare Conley's property with the adjacent property purchased from Southeastern Cardiac.

In his removal petition, Conley alleges that ASU engaged in stonewalling during the discovery period in circuit court and that the circuit court judge assigned to the case, Judge Gene Reese, "stymied his effort to prepare for trial" by, among other things, failing to schedule hearings or rule upon motions filed by Conley, imposing "prejudicial restraints on pre-trial discovery,"[4] and refusing to permit evidence of ASU's purchase price for Southeastern Cardiac property to be admitted in determining the value of Conley's property. Conley contends that the trial judge gave ASU preferential treatment during the state court proceedings in contemplation of political favors to be gained from the Alabama Democratic Conference, which was led by ASU's vice president and one of ASU's trustees.[5]

Finally, Conley contends that, before removing the case to federal court, he sought relief from the Alabama Supreme Court by filing a writ of mandamus, which was denied. Conley asserts that several members of the Alabama Supreme Court were likewise seeking re-election and were desirous of support from the Alabama Democratic Conference, which "affected the possibility of a corrective adjudication."

In sum, Conley contends that ASU officials, ASU's real estate appraiser, and various state court judges conspired to take his property for less than fair market value and that this scheme "resulted in reverse race discrimination" and the denial of his rights under the Fourteenth Amendment. Because of this alleged conspiracy, Conley contends, he cannot enforce his equal rights in the Alabama state courts and thus removal

---

[4]Conley contends that Judge Reese granted all of ASU's requests for protective orders during the seven or eight months of pre-trial discovery. Conley's discovery requests sought appraisers' depositions taken during pre-trial discovery in ASU's prior condemnation proceedings against Southeastern Cardiac. According to Conley, Judge Reese refused to order ASU to produce these materials or to take judicial notice of certain facts revealed in the court record in the Southeastern Cardiac litigation. Conley also alleges that Judge Reese refused to permit him to depose certain ASU officials or ASU's former attorney in charge of the condemnation proceedings. Finally, Conley contends that the trial judge repeatedly postponed the trial date, despite the fact that the case was the oldest case on the judge's docket and that Alabama law requires eminent domain cases to be expedited in advance of other civil actions, and that, at the time the removal petition was filed, no specific trial date had been set.

[5]Specifically, Conley alleges that the Alabama Democratic Conference placed pollsters at the entrance to voting stations around Montgomery to hand out marked ballots that urged voters to vote for Judge Reese, among others.

under 28 U.S.C. § 1443 is warranted.

## II. DISCUSSION

In relevant part, 28 U.S.C. § 1443(1) permits a defendant in a civil state court action to remove the action to federal district court if the action is against a person who is denied or cannot enforce in the state courts "a right under any law providing for equal civil rights of citizens of the United States." In *Georgia v. Rachel,* the United States Supreme Court articulated the two-prong test which a removal petition filed pursuant to § 1443(1) must satisfy. First, the petitioner must show that the right upon which the petitioner relies arises under a federal law "providing for specific civil rights stated in terms of racial equality." *Georgia v. Rachel,* 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). Second, the petitioner must show that he has been denied or cannot enforce that right in the state courts. *Id.* at 794, 86 S.Ct. 1783. After reviewing Conley's removal petition, we conclude that it does not satisfy the *Rachel* test.

A.    Law Providing for Equal Civil Rights

Conley alleges that the eminent domain action filed by ASU denied his rights under 42 U.S.C. §§ 1981, 1983 and 1985(3), and under the Equal Protection Clause of the Fourteenth Amendment. Under the first prong of *Rachel,* we must determine whether any of these asserted rights falls within the scope of § 1443(1). The phrase "any law providing for ... equal civil rights" refers to laws "providing for specific civil rights stated in terms of racial equality," and does not include rights of "general application available to all persons or citizens." *Rachel,* 384 U.S. at 792, 86 S.Ct. 1783. Our predecessor circuit, in a case very similar to the one presented by Conley, held that a defendant's "right to a fair trial and equal protection of the laws and [his] rights under 42 U.S.C. § 1983 do not arise from legislation providing for specific civil rights in terms of racial equality...." *See Sunflower County Colored Baptist Ass'n v. Trustees of Indianola Mun. Separate Sch. Dist.,* 369 F.2d 795, 796 (5th Cir.1966). Therefore, to the extent Conley relies upon broad assertions under the Equal Protection Clause or § 1983, those rights are insufficient to support a valid claim for removal under § 1443(1).

However, in *City of Greenwood v. Peacock,* decided on the same day as *Rachel,* the United States Supreme Court recognized that § 1981 qualifies under § 1443(1) as a law providing specific civil rights stated in terms of racial equality. *See City of Greenwood v. Peacock,* 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed.2d

944 (1966).[6] Furthermore, neither the Supreme Court nor this circuit has addressed whether § 1985(3), the other federal statute cited by Conley, qualifies as an "equal civil rights" statute. For purposes of this appeal, we assume without deciding that § 1985(3) meets *Rachel* 's definition of an equal civil rights statute under § 1443(1).[7] *See Davis v. Glanton,* 107 F.3d 1044, 1049-50 (3d Cir.1997) (declining to address whether § 1985(3) constitutes an "equal civil rights" statute within the meaning of § 1443(1), but noting that there are "strong arguments on both sides in terms of jurisprudence"). Nonetheless, we conclude that the district court properly remanded this action because, for reasons described herein, we find that Conley has failed to satisfy the second prong of *Rachel.*

B.        Right Denied or Unenforceable in State Courts

Generally, the denial of the petitioner's equal civil rights must be "manifest in a formal expression of state law." *Rachel,* 384 U.S. at 803, 86 S.Ct. 1783. This requirement ensures that removal is available only in cases where the denial of the right can be clearly predicted and avoids involving federal judges in "the unseemly process of prejudging their brethren of the state courts." *Id.* at 803-04, 86 S.Ct. 1783. However, under a narrow exception recognized by the Supreme Court in *Rachel,* even where the action is premised upon a facially neutral state law, if the very act of bringing the state court proceedings will constitute a denial of the rights conferred by the federal statute, § 1443(1) removal is proper. *Id.* at 804-05, 86 S.Ct. 1783.

For example, in *Rachel,* the state court defendants were prosecuted for criminal trespass after they refused to leave a privately-owned restaurant open to the general public. The defendants were civil rights

---

[6]42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of all persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[7]42 U.S.C. § 1985(3) states:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising a right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

demonstrators protesting the restaurant's policy of segregating its customers based on race. Although Georgia's criminal trespass statute was facially neutral, the act of prosecuting the defendants for criminal trespass directly conflicted with the Civil Rights Act of 1964, which precludes such state prosecutions for "peaceful attempts to be served upon an equal basis in establishments covered under the Act." *Id.* at 785, 86 S.Ct. 1783.

Conley concedes that Alabama's eminent domain provisions are facially neutral. He argues that his case falls within the latter category of cases recognized in *Rachel.* Conley contends that the filing of the eminent domain action is itself the act by which his federal civil rights have been violated. His argument is foreclosed, however, by *Sunflower County Colored Baptist Association v. Trustees of Indianola Municipal Separate School District,* 369 F.2d 795 (5th Cir.1966), in which our predecessor circuit held that a state's facially neutral eminent domain statutes do not conflict with or deny an eminent domain defendant's federal rights.

In *Sunflower County,* the Trustees of Indianola Municipal Separate School District brought eminent domain proceedings in Mississippi state court against the Sunflower County Colored Baptist Association, among others, to obtain land to build schools and playgrounds. *Sunflower County Colored Baptist Ass'n v. Trustees of Indianola Mun. Separate Sch. Dist.,* 369 F.2d 795, 795-96 (5th Cir.1966). At the time, the property owned by the Baptist Association was being used by civil rights organizations to give classes to black children and adults. *Id.* at 796. The Baptist Association filed a removal petition alleging jurisdiction under § 1443 because in the condemnation proceedings it would be "denied a fair trial, equal protection of the laws and particularly [would] be denied its federal rights arising under 42 U.S.C. § 1981, 1982 and 1983." *Id.* Although the court found that the Baptist Association had satisfied the first prong of *Rachel* when it cited § 1981, it concluded that it did not meet the second prong. *Id.* at 796-97, 86 S.Ct. 1783.

In reaching this conclusion, the former Fifth Circuit quoted *Peacock,* in which the Supreme Court stated that allegations of corruption or unfairness preceding or during a particular court proceeding do not support removal under § 1443(1), as follows:

> It is not enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, and that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of

the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state of federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

*Id.* at 797 (quoting *Peacock,* 384 U.S. at 827-28, 86 S.Ct. 1800). Noting that "the Association's claim that their federal civil rights will be denied must be based on the state constitution, a statute, municipal ordinance, rule of court or regulatory provision binding on the court which expressly deny such federal rights," the court concluded that "[n]o Mississippi statute, including the eminent domain statute, which confers on municipal separate school districts the power to acquire property for school purposes, or the Mississippi constitutional provision allowing the taking of property for public use, precisely conflicts and conclusively denies the federal rights of the Association." *Id.* at 797-98, 86 S.Ct. 1800 (citations omitted). Finally, again relying upon *Peacock,* the court noted that any denial of federal rights that might come to pass as the proceedings progressed could be redressed by direct review of the federal claims by the state appellate court and the United States Supreme Court or in other proceedings designed to remedy claims of unfair proceedings, denial of equal protection, and rights protected under § 1983. *Id.* at 798, 86 S.Ct. 1800.

We agree with the reasoning in *Sunflower County.* ASU's act of bringing a proceeding under Alabama's eminent domain laws does not directly conflict with Conley's rights under §§ 1981 and 1985(3).[8] Unlike the Civil Rights Act of 1964 in *Rachel,* neither § 1981 or § 1985(3) contains specific provisions that immunize Conley from the precise type of proceeding being brought in state court.

In *Rachel,* it was only because section 203(c) of the Civil Rights Act of 1964 expressly immunized the defendants from prosecution for trespass when they peacefully attempted to gain admittance and remain at the restaurant, that "the mere pendency of the prosecutions enables the federal court to make the clear prediction that the defendants will be 'denied or cannot enforce in the courts of (the) State' the right to be free of any 'attempt to punish' them for protected activity." *See Rachel,* 384 U.S. at 804-05, 86 S.Ct. 1783.[9] No

---

[8]Conley does not state precisely which rights under §§ 1981 and 1985(3) he has been denied.

[9]Conley's reliance upon *Sofarelli v. Pinellas County,* 931 F.2d 718 (11th Cir.1991) is equally unavailing. In *Sofarelli,* the removing defendant was attempting to move a house on a trailer over a public road in order to place it on a lot and sell it to a minority purchaser. The plaintiffs sought an injunction to prevent the defendant from relocating the house. The defendant's removal petition alleged that the plaintiffs' request for an injunction was motivated by race and invoked § 3617 of the Fair Housing Act of 1968, which makes it unlawful "to coerce, intimidate, threaten, or interfere with any other person ... on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted" by the Fair Housing Act. *See Sofarelli v. Pinellas County,* 931 F.2d 718, 720-22 & n. 2 (11th Cir.1991). In other words, the Fair Housing Act prohibited prosecution of a criminal or civil action against a person who had encouraged another to exercise their rights under the Fair Housing Act. *Id.* at

similarly explicit prohibition against proceedings brought in retaliation for engaging in a protected activity, and certainly no proscription against eminent domain proceedings, can be found in §§ 1981 or 1985(3). Therefore, no "equivalent basis [can] be shown for an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court." *Id.* at 804, 86 S.Ct. 1783.

Furthermore, Conley's allegation that he cannot get a fair trial in state court because the state trial judge is biased in favor of the defendant for political reasons does not state a cognizable ground for removal under § 1443(1). As the Supreme Court has made clear, charges "that the defendant is unable to obtain a fair trial in a particular state court" are insufficient to support removal under § 1443(1). *See Peacock,* 384 U.S. at 827, 86 S.Ct. 1800. The allegedly corrupt or otherwise improper motives of an individual state court judge do not show that Conley will be unable ultimately to obtain fair market value for his property in Alabama's state courts or to raise any due process claims he may have in either the state court action or a separate action in federal court.[10]

In conclusion, Conley's removal petition fails to satisfy the second prong of the *Rachel* test by demonstrating that the eminent domain proceeding filed in state court is itself an act by which his equal civil rights have been violated. Therefore, Conley's allegations do not fall within the scope of § 1443(1), and the district court's order remanding this action to state court was proper.

AFFIRMED.

---

724-45. Neither § 1985(3) nor § 1981 contains a similar provision that could be read to prohibit the bringing of a civil eminent domain action. Furthermore, the court in *Sofarelli* did not squarely address this issue as the parties did not dispute that Sofarelli's allegations fell within the holding of *Rachel. See id.* at 725. Rather the court addressed whether remand was nonetheless proper in light of the district court's conclusion that Sofarelli had failed to state a claim under the Fair Housing Act. *Id.*

[10]We note that, as a result of Conley's allegations of corruption in his removal petition, the state trial judge has recused himself from the case to avoid any appearance of impropriety. Furthermore, we agree with ASU that Conley has failed to show that he cannot vindicate his rights in Alabama's appellate courts. The denial of Conley's petition for a writ of mandamus does not "operate as a binding decision on the merits." *See R.E. Grills, Inc. v. Davison,* 641 So.2d 225, 229 (Ala.1994). Likewise, his request to appeal a discovery order was an interlocutory matter, the denial of which does not have res judicata effect. *See Ex Parte Ryals,* 773 So.2d 1011, 1014 (Ala.2000) (holding that trial court's interlocutory order was not a final judgment for purposes of res judicata).